**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **ISAIAH KINNEY,** | **Civil Action No. 17-5608 (MCA)** |
| **Petitioner,** | |
| v. | **OPINION** |
| **PATRICK A. NOGAN,** *et al.*, | |
| **Respondent.** | |

APPEARANCES:

Isaiah Kinney
East Jersey State Prison
Lockbag R
Rahway, NJ 07065
       Petitioner, *pro se*

Lucille M. Rosano
Acting Assistant Prosecutor
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ 07102
       On behalf of Respondents.

**Arleo, United States District Judge**

## I.    INTRODUCTION

Petitioner Isaiah Kinney ("Petitioner"), a prisoner currently confined at East Jersey State

Prison in Rahway, New Jersey, has filed a *pro se* Petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  (D.E. No. 1).  For the reasons explained in this Opinion, the Court will deny

the Petition and will deny a certificate of appealability,

## II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

The factual background and procedural history in this matter were summarized in part by

the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal.[1]

> Jackie Kinney, the former wife of defendant and a former friend of Jones, is the girlfriend of Floyd Simmons. Jones, Jackie Kinney and Simmons resided together in Jackie Kinney's home on Prospect Street, East Orange.
>
> On the evening of January 28, 2006, Jones and defendant visited the medical office where Jackie Kinney worked. Jones had also taken her dog with them to the office. Because Jackie Kinney did not allow the dog in the office, defendant and Jones proceeded to Kinney's residence, intending to leave the dog there. Upon their arrival at Kinney's house, Simmons opened the door but refused Jones entry in the house with the dog. The two began to argue, and Simmons pushed Jones. A struggle ensued.
>
> Defendant followed Jones into the house. On observing the altercation between Jones and Simmons, defendant attacked Simmons. The two men fell onto a table in the living room, breaking it. Jones picked up one of the table legs, striking Simmons repeatedly in the head and face with it while defendant pinned him down on the living room floor. During the attack, Simmons lost consciousness.
>
> Defendant and Jones dragged Simmons in the kitchen. The kitchen oven was on with its door left open to heat the house. Jones pulled the hot oven racks out of the oven with a towel to prevent being burned, and placed them on the floor. Defendant and Jones then lifted Simmons up and shoved him head first into the oven, up to his waist.
>
> After the assault, Jones drove defendant in her red Chevrolet Cavalier to a single-family dwelling on Washington Terrace where defendant rented a room on the second floor. At that time, Sergeant Larry Martin of the East Orange Police Department was on patrol in a marked patrol car when he observed the red Chevrolet travelling north on Prospect Street. The Chevrolet entered the intersection of Park Avenue and made an illegal left turn in front of the patrol car. Martin immediately activated his emergency lights and siren, and

---

[1] The facts found by the Appellate Division are presumed correct pursuant to 28 U.S.C. § 2254(e)(1).

pursued the car west on Prospect Street. However, Jones did not stop.

Jones pulled over at the intersection of Washington Terrace and Morton Place. As defendant exited the passenger side car door, Martin ordered him to step back into the car. Defendant leaned toward the passenger window, gazed at the sergeant for a minute, and then walked away, saying, "I got to go in the house, I will be back." Defendant climbed the front stairs of the Washington Terrace residence, and Jones pulled away.

Martin decided to follow Jones, believing that he would have been unable to reach the front porch before defendant entered the house. During the pursuit, Jones turned onto Brighton Avenue, lost control of the car, and crashed.

Martin next ordered Jones who had exited the car to the ground. Jones appeared "extremely agitated," "irate" and "upset," and was sweating profusely. Although Jones's white pants legs were blood-soaked, Martin did not observe any injuries. Based on a statement made by Jones, Martin directed Police Officers Oceola Fair and Lakia Hale to respond to the home on Prospect Street. He also directed other officers to the Washington Terrace residence to detain defendant. A pair of blue and white men's boxer-style underwear with bloodstains was found in Jones's car.

Patrolmen Gillyard and two detectives proceeded to the Washington Terrace residence to arrest defendant. On their arrival, defendant was just leaving the shower. The officers detained defendant in his second floor bedroom. While there, the officers recovered a bloodstained, white thermal tee shirt with a large bloodstain on the chest from defendant's bedroom floor, and a bloodstained pair of blue jeans from the hallway just outside the bedroom. Officer Gillyard collected the clothing and requested Martin to respond to the apartment. Once there, Martin identified defendant as the individual he saw exit the Chevrolet and climb the stairs to the residence. At the time of defendant's arrest, the officers did not observe any injuries on him other than minor scratches on his forehead.

In the interim, Fair and Hale had responded to the home on Prospect Street. Officer Fair, observing blood on the floor through the partially open front door, pushed the door open and yelled into the house, but received no response. The living room was in disarray, and a significant amount of blood was splattered throughout the room. An end table with a shattered glass top and broken legs laid

on the floor. One of the table's legs was missing. Bloody drag marks led from the broken end table to the kitchen.

On entering the kitchen, the officers noticed that the oven was set to its highest temperature, the oven door was open and the oven racks were on the floor. Simmons laid motionless on the kitchen floor in a pool of blood with severe head injuries. He was naked from the waist down, lying on top of an oven rack. The top of his body was partially covered by a pulled-up, bloody shirt and his blood-soaked pants were underneath him. Simmons had fresh, burn marks from the oven racks on his back, and one large burn in the middle of his back. His body was resting about one and one-half feet from the oven with his head facing toward the oven door. Officer Fair called for an emergency response unit.

Due to the severity of his head injuries, Simmons, who at the time of trial was 47 years-old, could not recall the attack and had difficulty understanding the prosecutor's questions on direct examination. However, he was able to testify as to his injuries. Simmons testified that he was hospitalized for four months, part of that time in a coma. He underwent several surgeries, including one to remove part of his skull and brain on the left side of his head. He suffered burns to his back; underwent a tracheotomy; required a respirator to breathe; and received nourishment via a stomach tube. As a result of his injuries, Simmons temporarily lost his ability to walk, suffers from headaches and neck problems, and has difficulty breathing. He has not worked since the assault and continues to see a doctor on a monthly basis.

The medical records outlining the nature, extent and severity of Simmons' injuries were admitted in evidence. Those records showed that Simmons suffered an open skull fracture, severe traumatic brain injury, multiple facial, head and back burns, respiratory failure and burns to his lungs. He sustained multiple head and facial fractures: two fractures of the right parietal bone; fractures of the left nasal bone; a fracture through the interior wall of the right external auditory canal; and a fracture of the right temporal bone.

*State v. Kinney*, Indictment No. 06-06-2017, 2010 WL 1029497, *2-4 (N.J. Super. Ct. App. Div.

Mar. 19, 2010).

Following the jury trial, Petitioner was convicted of second-degree conspiracy to commit aggravated assault, in violation of N.J. Stat. Ann. §§ 2C:5-2 and as a lesser-included offense of count one, first-degree conspiracy to commit murder, as well as second-degree aggravated assault in violation of N.J. Stat. Ann. § 2C:12-1b(1). *See id.* at *1. He was acquitted of the remaining charges. *Id.* Petitioner was sentenced to a twenty-year extended term of imprisonment subject to the New Early Release Act and to a three-year term of parole supervision upon release. *Id.*

The Appellate Division affirmed Petitioner's conviction. *Kinney*, 2010 WL 1029497. The New Jersey Supreme Court denied certification on October 25, 2012. *State v. Kinney*, 997 A.2d 231 (N.J. 2010).

Petitioner subsequently filed a petition for post-conviction relief ("PCR"), which the Superior Court denied on May 29, 2012, without convening an evidentiary hearing. (D.E. No. 4-18). On September 29, 2016, the Appellate Division reversed and remanded for further proceedings related to all of the issues and recommend that the PCR Court convene a hearing on Petitioner's ineffective assistance of appellate counsel claim. *State v. Kinney*, A-2780-12T4, 2014 WL 1385946 (N.J. Super. Ct. App. Div. Apr. 10, 2014). On remand, the PCR Court convened an evidentiary hearing and subsequently denied Petitioner's petition. (D.E. No. 4-28). The Appellate Division affirmed the PCR Court's denial. *State v. Kinney*, A-3624-14T1, A-5675-14T1, 2017 WL 490536 (N.J. Super. Ct. App. Div. Feb. 7, 2017). On June 15, 2017, the New Jersey Supreme Court denied Petitioner's petition for certification. *State v. Kinney*, 169 A.3d 980 (N.J. 2017).

Petitioner filed the instant petition for habeas relief under § 2254 on July 31, 2017. (D.E. No. 1). Respondent filed its Answer on November 16, 2017.[2] (D.E. No. 4). Petitioner filed a reply on December 26, 2017. (D.E. No. 5). The matter is fully briefed and ready for disposition.

Petitioner raises the following claims in his federal habeas petition:

1. The trial court erroneously instructed the jury that Petitioner's co-conspirator, Gloria Jones's, pending sentence did not weigh on her credibility. (D.E. No. 1-3 at 1-3).

2. The trial court erroneously provided written instructions when the jury asked for clarification on conspiracy and aggravated assault rather than to explain it to them in "plain language." (D.E. No. 1-3 at 4-5).

3. Ineffective assistance of trial counsel for withdrawing Petitioner's motion to suppress. (D.E. No. 1-3 at 6-10).

4. Petitioner's sentence was unconstitutional. (D.E. No. 1-3 at 11-13).

## III.   STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of state trial and appellate courts. *See Renico v. Lett,* 559 U.S. 766, 773 (2010).

---

[2] Respondent submits that the petition is time-barred pursuant to AEDPA's one-year statute of limitations. (D.E. No. 4 at 48-51). The Court will nonetheless reach the merits. *See Day v. McDonough*, 547 U.S. 198, 210 (2006).

Where a state court adjudicated a petitioner's federal claim on the merits, a federal court has "no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Clearly established law for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Finally, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d. Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996), and *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

# IV.  ANALYSIS

For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

## A.  Trial Court Errors

### 1.  Trial Court's Erroneous Jury Instructions

In ground one of his federal habeas petition, Petitioner asserts that the trial court erroneously instructed the jury that Petitioner's co-conspirator's, Gloria Jones, pending sentence did not weigh on her credibility.  (D.E. No. 1-3 at 1-3).  The state responds that the trial court's instruction did not implicate his constitutional rights.  (D.E. No. 4 at 23-31).

On habeas review, the district court must review the last reasoned state court decision on each claim.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Petitioner raised this very claim on direct appeal.  *See Kinney*, 2010 WL 1029497 at *1.

The Appellate Division denied the claim as follows-

> When a defendant raises error in the jury charge, we examine the charge in its entirety, not just the isolated part challenged, to determine the overall effect of the instruction.  *State v. Robinson*, 165 N.J. 32, 47, 754 A.2d 1153 (2000).  "[I]f on reading the charge as a whole, 'prejudicial error does not appear, then the verdict must stand.'"  *State v. Ramseur*, 106 N.J. 123, 267, 524 A.2d 188 (1987) (quoting *State v. Council*, 49 N.J. 341, 342, 230 A.2d 383 (1967)).
>
> In the context of accomplice testimony, the trial court should give a cautionary instruction "that the evidence of an accomplice is to be carefully scrutinized and assessed in the context of his specific interest in the proceeding."  *State v. Begyn*, 34 N.J. 35, 55, 167 a.2d 161 (1961); *see also State v. Spruill*, 16 N.J. 73, 78-79, 1060A.2d 278 (1954); *State v. Mangrella*, 86 N.J. Super. 404, 408, 207 A.2d 175 (App. Div. 1965).  "Ordinarily, the need to give careful scrutiny' to the testimony of an accomplice applies when he testifies for the State and can hope to gain some benefit for himself, such as a lighter penalty, if he has not already been sentenced, or a pardon, reduction in the sentence, or even a dismissal of a pending charge."  *State v. Kintner*, 105 N.J. Super. 463, 465-66, 253 A.2d 178 (App. Div.),

*certif. denied*, 54 N.J. 247, 254 A.2d 793 (1969) (quoting *State v. Spruill*, supra, 16 N.J. at 79-80, 106 A.2d 278). "[T]he potential for misuse is manifest" without an instruction guiding the jury's use of a co-defendant's guilty plea and pending sentence in its deliberations. *State v. Stefanelli*, 78 N.J. 418, 435, 396 A.2d 1105 (1979).

Here, at time of trial, Jones had pled guilty but had not yet been sentenced. In instructing the jury concerning its evaluation of Jones's testimony, the court provided the jury, for the most part, with an instruction that mirrored the language contained in the Model Criminal Jury Charge, "Testimony of a Cooperating Co-defendant or Witness." (2006). However, at the end of the instruction, the court added the following statement. "Evidence has been introduced to show that Gloria Jones has yet to be sentenced for the crimes which she has pleaded guilty. This evidence of this witness's present status does not have any bearing on the credibility to be given her testimony. . . . " (emphasis added).

We agree that the trial court erred in instructing the jury that Jones's pending sentencing was not a factor to be considered in assessing her credibility. However, we are satisfied that the error does not constitute plain error when the instructions are considered as a whole. The aforementioned additional instruction was immediately followed by the correct statement of law that:

> [r]ather the evidence has been admitted to allow you to determine whether her testimony has been influenced by possible bias, prejudice, interest or ulterior motive. More specifically, this evidence [may be] relevant to the questions of whether her testimony is influenced by a hope or expectation of favorable treatment.

*Kinney*, 2010 WL 1029497 at *6-7.

To show that a jury instruction violated due process, Petitioner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (internal citation and quotation marks omitted). The instruction "must be considered in the context of the

instructions as a whole and the trial record." *Id.* at 191 (internal citation and quotation marks omitted). Moreover, "it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (internal citation and quotation marks omitted). "In other words, the inquiry requires careful consideration of each trial's unique facts, the narratives presented by the parties, the arguments counsel delivered to the jurors before they retired to deliberate, and the charge as a whole." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (citing *Waddington*, 555 U.S. 179).

> [Q]uestions relating to jury charges are normally matters of state law and not cognizable in federal habeas review. *See Engle v. Isaac, 456 U.S. 107 (1982)*; *Henderson v. Kibbe,* 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), *cert. denied,* 502 U.S. 902 (1991); *Grecco v. O'Lone,* 661 F.Supp. 408, 412 (D.N.J.1987). [T]he district court must consider " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.' "*Henderson,* 431 U.S. at 154 (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47 (1973)).

*Porter v. Brown*, No. 04-4415, 2006 WL 2640624, at *8 (D.N.J. Sept. 12, 2006).

Prior to Petitioner's trial, his co-conspirator, Gloria Jones, entered a plea bargain in which she would plead guilty to conspiracy to commit aggravated assault and second-degree aggravated assault and to testify truthfully against Petitioner. *Kinney*, 2010 WL 1029497 at *1. In exchange, the state agreed to recommend that Jones be sentenced to an eight-year term of imprisonment with an 85% period of parole ineligibility pursuant to NERA and dismissal of the remaining charges. *Id.*

Upon review of the trial court's instructions as it relates to Gloria Jones's testimony and her custody status, the Court notes that the trial court gave further limiting instructions on how the jury should consider her testimony, relevant portions of which are as follows-

> You may consider such evidence along with all the other factors that I mentioned previously in determining the credibility of a witness. However, you may not use Gloria Jones' plea of guilty as evidence that this defendant, Isaiah Kinney, is guilty of the crimes that he is charged with.

(D.E. No. 4-46 at 19).

Petitioner has not established how the trial court's instruction violated his right to a fair trial. The state court's decision was not an unreasonable application of the facts nor was it in violation of clearly established federal law. Habeas relief is thus denied.

> 2. Trial Court Erroneously Provided Written Jury Instructions Clarifying an Offense Rather Than to Explain it in Plain English

Petitioner next submits that the trial court erroneously provided written instructions when the jury asked for clarification on the offenses of conspiracy and aggravated assault, rather than explain it to them in "plain language." (D.E. No. 1-3 at 4-5). Respondent contends that the trial court properly exercised its discretion by giving the jurors the written instructions and that Petitioner has not demonstrated that the jury applied the instructions in a way that violates the Constitution. (D.E. No. 4 at 32-35).

Petitioner raised the issue on direct appeal and the Appellate Division denied the claim citing New Jersey Rule 2:11-3(e)(2).[3] *Kinney*, 2010 WL 1029497 at *7.

---

[3] This rule authorizes an affirmance when in an appeal of a criminal, quasi-criminal or juvenile matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion.

The trial record reflects that the jury asked for the definition of aggravated assault in written form. (D.E. No. 4-49 at 15). Shortly thereafter, the jury requested the definition of conspiracy in written form as well. (*Id.* at 21-22). The trial court supplied both written definitions without any objection. Petitioner has not pointed to any Supreme Court precedent that proscribes providing jury instructions in written form, *see Toledo v. Johnson*, CV 15-03211-GW(KES), 2017 WL 442905 at 26 (C.D. Cal., Jan. 25, 2017), nor has he provided any precedent that requires trial courts give a "plain English" explanation of a charge. Moreover, the jury's acquittal on the conspiracy to murder count, attempted murder and weapon possession counts while convicting on the conspiracy to commit aggravated assault charge, reflects an understanding of the definitions. *See United States v. Hedgepeth*, 434 F.3d 609, 614 (3d Cir. 2006) (citing *United States v. Palmeri*, 630 F.2d 192, 2020 (3d Cir. 1980) ("jury's acquittal of defendants on some counts and not others as evidence that they understood the verdict form"). Consequently, the state court's decision was not an unreasonable application of clearly established federal law. Habeas relief is thus denied.

B.     Ineffective Assistance of Counsel for Withdrawing Motion to Suppress

Next, the Court will address Petitioner's claim that counsel was ineffective for withdrawing a motion to suppress evidence that was seized from Petitioner's residence. (D.E. No. 1-3 at 6-10). Petitioner was represented at trial by Mr. Robert Miseo, Esq.

Petitioner unsuccessfully raised this very claim in his PCR proceeding and the Appellate Division affirmed the denial as follows.

> Defendant argues the PCR court erred by finding trial counsel's withdrawal of the suppression motion did not constitute deficient performance and instead was the product of a reasoned trial strategy. Defendant asserts that trial counsel's performance was deficient because the facts and applicable law did not support trial counsel's conclusion that the search and seizure was justified under the fresh pursuit doctrine. *See generally*, *Warden v. Hayden*, 387 *U.S.* 294, 298–300, 87 *S.Ct.* 1642, 1645–1647, 18 *L.Ed.* 2d 782, 787–88

(1967); *State v. Josey*, 290 *N.J. Super.* 17, 24–30 (App. Div.), *certif. denied*, 146 N.J. 497 (1996); *State v. Stupi*, 231 *N.J. Super.* 284, 288 (App. Div. 1989). Thus, defendant claims the PCR court erroneously determined he failed to establish his counsel's performance was deficient under the first prong of the *Strickland* standard.

We find it unnecessary to determine if the PCR court correctly concluded trial counsel's decision to withdraw the suppression motion did not constitute deficient performance under the first prong of *Strickland*. "Although a demonstration of prejudice constitutes the second part of the *Strickland* analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." *Gaitan*, *supra*, 209 *N.J.* at 350 (citation omitted). We employ that analysis here.

At trial, defendant did not dispute that he was present in Simmons's home when Simmons sustained his serious injuries, nor could he credibly have done so because Jones testified as to defendant's presence, he was observed by police officers in the car with defendant immediately following the assault, and he was observed by his neighbor to be covered in blood after he exited the vehicle and entered his home. As correctly noted by the PCR court, the evidence seized from defendant's residence was unimportant because it established nothing more than what defendant readily conceded at trial—that he was present during the violent physical confrontation with Simmons that resulted in Simmons's injuries. Thus, based on our review of the record, we are convinced defendant failed to demonstrate that but for his counsel's purported error, there is a reasonable probability that the result of the trial would have been different. *Strickland*, *supra*, 466 *U.S.* at 694, 104 *S. Ct.* at 2068, 80 *L.Ed.* 2d at 698.

Moreover, even assuming trial counsel did not withdraw the suppression motion and it had been granted, defendant did not demonstrate there is a reasonable probability that exclusion of the evidence at trial would have been of such "magnitude that [its absence] could have 'led the jury to a result it otherwise might not have reached.' " *State v. Clowney*, 299 *N.J. Super.* 1, 21 (App. Div. 1997) (quoting *State v. Macon*, 57 *N.J.* 325, 336 (1971)).

A petitioner must establish both prongs of the *Strickland* standard in order to obtain a reversal of the challenged conviction. *Strickland*, *supra*, 466 *U.S.* at 687, 104 *S. Ct.* at 2064, 80 *L.Ed.* 2d at 693; *Nash*,

> *supra*, 212 *N.J.* at 542; *Fritz*, *supra*, 105 *N.J.* at 52. Defendant's failure to establish he was prejudiced under the second prong of the *Strickland* standard required the PCR court's denial of his PCR petition. *Strickland*, *supra*, 466 *U.S.* at 700, 104 *S. Ct.* at 2071, 80 *L.Ed.* 2d at 702.

*See Kinney*, 2017 WL 490536 at *6.

The Supreme Court set forth the standard by which courts must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the defendant must show that he was prejudiced by the deficient performance. *Id.* This requires showing that counsel's errors deprived the defendant of a fair trial. *Id.*

Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Id.* at 690. In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. In addition, judges must consider the facts of the case at the time of counsel's conduct, and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.* The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Furthermore, a defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below

*Strickland's* standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted). "With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

Petitioner submits that his counsel was ineffective for withdrawing a suppression motion that was previously pending before the trial court.[4] (D.E. No. 1-3 at 7). Petitioner alleges that the challenged evidence, blood-stained articles of clothing, were recovered by the police in the clothes hamper in his home, while he was showering. (D.E. No. 1-3 at 10). He does not provide any arguments to support his claim that counsel was ineffective for withdrawing the suppression motion.

---

[4] Trial Counsel testified at the PCR evidentiary hearing that he was under the impression that the motion to suppress was filed by a colleague prior to his inheriting the case from another attorney at the Public Defender's Office. (D.E. No. 4-53 at 7). Petitioner later clarified in his testimony that he personally filed the suppression motion before Mr. Miseo's representation commenced. (*Id.* at 26).

At Petitioner's trial, Carl Dennis, who owned the home Petitioner was living in on the date of the incident[5], testified that Petitioner returned home that day with blood on his hands and shirt. (D.E. No. 4-45 at 26, 28-29). Dennis testified that Petitioner told him that he was attacked by six people shortly before he returned home. (*Id.* at 29). Once law enforcement arrived, Dennis allowed them entry in the home, under the assumption that they were there to investigate an attack on Petitioner. (*Id.* at 30). Also at the trial, the law enforcement personnel who responded to Petitioner's home testified that a blood-stained white thermal shirt was observed in his bedroom and a pair of blood-stained jeans were observed in the hallway outside of his bedroom. (*Id.* at 11, 19). These items were entered into evidence, (*id.* at 22-23), however, no DNA analysis results of the clothing items were submitted as evidence.

This Court has also reviewed the PCR evidentiary hearing testimony which includes that of trial counsel, Mr. Miseo, and Petitioner. (D.E. No. 4-53). Mr. Miseo testified that his trial strategy was to pursue a justification defense. (*Id.* at 9). The defense's case was that Petitioner was engaged in a physical altercation with Floyd Simmons on the date in question, however, it was in the defense of others. (*Id.*) Miseo testified that in addition to the fact that there was witness testimony of individuals who had observed Petitioner in blood-stained clothes shortly after the attack, the introduction of the clothes had little bearing on their defense as there was no factual dispute about whether Petitioner was engaged in a physical fight with Simmons. (*Id.* at 8-9).

Even if counsel had not withdrawn the suppression motion, in light of the defense's reliance on the affirmative defense of justification at Petitioner's trial, and the testimonial evidence that Petitioner was observed with blood on his body and clothes shortly after Simmons was attacked,

---

[5] Dennis described the property as a three-story, single family home in which Petitioner occupied one bedroom on the second floor. (D.E. No. 4-45 at 27).

Petitioner has not established how pursuing the suppression motion would have changed the outcome of the trial. Petitioner has not established how he was prejudiced by his counsel's decision to withdraw the suppression motion and the state court's opinion on that ground is not an unreasonable application of clearly established federal law. Habeas relief is thus denied.

C.     Unlawful Sentence

Lastly, Petitioner submits with very little supporting facts or arguments that his sentence violates *Boykins v. Alabama,* 395 U.S. 238 (1995). Petitioner raised two unique sentence-related claims on direct appeal and in his PCR proceedings, respectively. (*See* D.E. Nos. 4-8 at 47-50, 4-9 at 5-8; *see also* D.E. No. 4-15 at 25-26). However, upon reviewing Petitioner's submission to the Appellate Division after his first PCR filing was denied, this claim appears to be analogous to the sentencing claim raised in his *pro se* submissions in that proceeding, where he also relied on *Boykins v. Alabama.* (*See* D.E. No. 4-23 at 9-12).

The Appellate Division summarily denied the claim as meritless pursuant to Rule 2:11-3(e)(2) on appeal of the second PCR denial. *See Kinney*, 2017 WL 490536 at *7. "[F]ederal habeas law employs a 'look through' presumption." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018). In cases in which the last reasoned decision is unexplained, the federal court should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* at 1192.

The PCR Court, which provided the last reasoned decision, denied the claims as follows-

> Petitioner next incorporates by reference his *pro se* Motion to Correct Illegal Sentence, filed July 18, 2013. The State has not responded to this motion in its post-remand brief.
>
> In his *pro se* Motion to Correct Illegal Sentence, Petitioner argues that the Court improperly imposed an extended term sentence because Petitioner's 1983 guilty plea was unconstitutional. Specifically, the plea form used in 1983 did not advise defendants

of the constitutional rights that they were waiving by pleading guilty. Thus, Petitioner did not plead guilty knowingly and voluntarily. Petitioner argues that a valid waiver cannot be assumed from a silent record. Petitioner attached a copy of his plea form from his 1983 guilty plea to the motion. Petitioner also attached to his motion his request for the transcript from his 1983 guilty plea. According to that form, the stenographic record of the proceeding was destroyed after 20 years, and the transcript is unavailable.

In a first PCR petition, a claim that could reasonably have been raised in a prior proceeding is barred unless enforcing this rule "would result in fundamental injustice." R.3:22-4(a).

Where a PCR petitioner argues that his sentence was illegally enhanced based on an involuntary guilty plea, the petitioner must show that he is entitled to relief by a preponderance of the evidence. *State v. Marshall*, 244 N.J. Super. 60, 65, 69 (Law Div. 1990). "[A] prior conviction may not be used to enhance punishment for a later conviction if the prior conviction was obtained in a constitutionally impermissible manner. *Id.* at 66. A court may not accept a guilty plea unless it is satisfied "that there is a factual basis for the plea and that the plea is made voluntarily and intelligently with an understanding of the nature of the charge and the consequences of the plea." *State v. Taylor*, 80 N.J. 353, 362 (1979) (internal quotation marks omitted).

A petitioner is entitled to an evidentiary hearing on his PCR petition only if: (1) he establishes a *prima facie* case in support of his petition; (2) the court determines "that there are material issues of disputed fact that cannot be resolved by reference to the existing record"; and (3) the court determines "that an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b). "To establish a *prima facie* case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." *Id.* The bare allegation of a constitutional claim is insufficient to meet his burden. *State v. Cummings*, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, a petitioner must allege specific facts supporting his claim. *Id.*

As an initial matter, Petitioner's claim that his sentence is illegal is procedurally barred under R. 3:22-4(a). Petitioner could have raised this issue on direct appeal; he has alleged no newly discovered facts nor a new rule of constitutional law in support of the claim. R. 3:22-4(a). Petitioner would have been aware of the facts underlying this claim since 1983 when he entered the guilty plea at issue. Moreover,

the law at that time required the court taking the guilty plea to ensure that there was a factual basis for the plea, that the plea was made voluntarily, and that the defendant understood both the nature of the charges against him and the consequences of pleading guilty. *See, e.g.*, *Taylor*, 80 N.J. at 362. Thus, the legal basis for this claim existed when Petitioner was pursuing his direct appeal in the present case in 2008.

Even if this claim were not procedurally barred, it would be denied because Petitioner has not shown by a preponderance of the evidence that he is entitled to relief. *See Marshall*, 244 N.J. Super. at 69. Petitioner has alleged that his 1983 guilty plea was invalid, but he has offered no evidence in support of this claim. That the transcript of the plea colloquy is unavailable due to the age of the case does not change this conclusion. With respect to the missing transcript, Petitioner has not alleged how the transcript would show that his plea was invalid. Rather, he merely states that he requested [] the transcript to see if he was advised of the constitutional rights that he was waiving. In light of Petitioner's own failure to specify how his plea colloquy was allegedly deficient, the Court will not assume that the judge who accepted the plea neglected his duty to ensure that the plea was made knowingly and voluntarily and was based on a sufficient factual basis. Moreover, the Court has reviewed the cases that Petitioner cited in support of his argument that a valid waiver cannot be assumed from a silent record. None of the cited cases involve legal issues or procedural postures similar to those present in this case.

Finally, even if this claim were not procedurally barred, an evidentiary hearing would not be warranted because Petitioner's bare allegation that his 1983 plea was not made knowingly and voluntarily is insufficient to establish a *prima facie* case of an illegal sentence. *See* R. 3:22-10(b); *Cummings*, 321 N.J. Super. at 170. Petitioner has not alleged any specific facts to support his claim or stated with specificity why the plea was invalid. That is, he has not alleged that there was no factual basis for the plea; that he was threatened, pressured, or coerced into pleading guilty; or that he did not understand the nature of the charge against him. *See Taylor*, 80 N.J. at 362. Nor has Petitioner alleged which, if any, constitutional rights the court failed to advise him that he was waiving by pleading guilty. *See id.* Thus, Petitioner has made only a bare allegation that his 1983 guilty plea was accepted unconstitutionally, and this bare allegation is insufficient to establish a reasonable likelihood that the claim will succeed on the merits. *See* R.3:22-10(b); *Cummings*, 321 N.J. Super. at 170.

(D.E. No. 4-27 at 16-19).

New Jersey Rule 3:22-4(a) provides-

A first petition for post-conviction relief shall be dismissed unless the court finds:

> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or

> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or

> (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

> A ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence.

> A denial of relief would be contrary to a new rule of constitutional law only if the defendant shows that the claim relies on a new rule of constitutional law, made retroactive to defendant's petition by the United State Supreme Court or the Supreme Court of New Jersey that was unavailable during the pendency of any prior proceedings.

N.J. Ct. R. 3:22-4(a).

> A state rule is "adequate" for procedural default purposes if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir.2001). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," and that review is foreclosed by "what may honestly be called 'rules' ... of general applicability[,] rather than by whim or prejudice against a claim or claimant." *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005).

*Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007).

Here, the instant claim is defaulted due to Petitioner's failure to raise it in conformity with state rules, and Petitioner does not argue that such rule is not firmly established nor regularly

followed—indeed, New Jersey appellate courts frequently decline to consider claims that were not first raised in a prior proceeding even though they could have been. *See State v. Moore*, 641 A.2d 268, 271-73 (N.J. Super. Ct. App. Div. 1994); *see also State v. Robinson*, 200 N.J. 1, 20 (2009) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available[.]") (quoting *Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234 (1973)); *State v. Coleman*, Indictment No. 13-04-0210, 2016 WL 6937921, at *5 (N.J. Super. Ct. App. Div. Nov. 28, 2016); *State v. Dunlap*, Indictment No. 10-07-0983, 2016 WL 207616, at *1 n.3 (N.J. Super. Ct. App. Div. Jan. 19, 2016); *State v. Southerland*, Indictment No. 09-10-1750, 2015 WL 392172, at *7-8 (N.J. Super. Ct. App. Div. Jan. 30, 2015). Moreover, the Appellate Division has consistently upheld procedurally defaulted PCR denials pursuant to Rule 3:22-4. *See State v. Fleming*, Indictment No. 03-02-0286, 2016 WL 3449249 *3 (N.J. Super Ct. June 24, 2016); *see also State v. Messam*, Indictment No. 85-08-03187, 2015 WL 966027 *4 (N.J. Super Ct. App. Div. Mar. 6, 2015). The United States Court of Appeals for the Third Circuit has also found New Jersey court rules such as Rule 3:22-4 to be an independent and adequate ground for procedural default. *See Cabrera v. Barbo*, 175 F.3d 307, 314 (3d Cir. 1999).

Petitioner has not alleged any facts to support cause to excuse his procedural default by demonstrating either "cause for the default and prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995) (quoting *Carrier*, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of

constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. Here, Petitioner has not presented any new evidence to demonstrate his innocence.

This Court agrees that Petitioner's claim is procedurally defaulted and also agrees with the state court's alternate holding that the claim was nonetheless meritless. Petitioner submits in the instant petition that he entered a guilty plea on August 5, 1983, "without waiving his Sixth Amendment rights to trial by jury, to confront the witnesses against him and his Fifth Amendment right to remain silent." (D.E. No. 1-3 at 11). In support of this claim in his state court filing, he appended a certified copy of the New Jersey form LR-27 which he completed and signed when he entered the August 5, 1983, guilty plea for receiving stolen property in the third degree. (D.E. Nos. 4-23 at 69-70, 4-31 at 114). He further argues in his reply that, "[s]tanding alone or in conjunction, the LR 27; LR 28; Guilty Plea Forms and the state court failed to inform petitioner of his *Boykin* rights and therefore, this issue raises serious doubts as to whether petitioner understood the nature of the rights that he was waiving." (D.E. No. 5 at 23). The Court has reviewed that exhibit and is not persuaded that it demonstrates that he was not apprised of the rights he was waiving by entering a guilty plea. The state court form that Petitioner references does not appear to serve as a waiver of rights form and therefore would not necessarily include an exhaustive recitation of the rights Petitioner was waiving by pleading guilty. As Respondent notes, Petitioner has not obtained a copy of the actual plea transcript from the guilty plea hearing.[6] (D.E.

---

[6] Petitioner appended as an exhibit in the state court, a transcript request form, which was not

No. 43 at 46). Respondent argues that notwithstanding the transcribed recording of the hearing being unavailable to Petitioner, the record does not reflect that he requested the audio recording of the guilty plea entry hearing or that he was advised that it was unavailable. (*Id.*)

Moreover, despite Petitioner's reliance on *Boykins v. Alabama*, 395 U.S. 238 (1969), the petitioner in *Boykins* was able to demonstrate that he entered an unconstitutional guilty plea. There, the record reflected that the petitioner pled guilty to five felony counts, including one which was capital punishment eligible, at his arraignment and the record did not reflect that the judge asked the petitioner any questions nor did the Petitioner ask any questions of the judge. *See Boykins*, 395 U.S. at 239. Here, Petitioner provides no facts about the procedural history leading up to the 1983 conviction. Nor does he provide any indication of the nature of his guilty plea proceeding and what if any colloquy took occurred. Rather, Petitioner provides a conclusory allegation of a constitutional violation with no credible support. "[B]ald assertions and conclusory allegations" do not provide a court with sufficient information to permit a proper assessment of habeas claims, and a habeas court cannot speculate about claims. *See Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir. 1987). In light of this, the state court's decision is not an unreasonable application of clearly established federal law. Habeas relief is thus denied.

## V.    CERTIFICATE OF APPEALABILITY

This Court must determine whether Petitioner is entitled to a certificate of appealability in this matter. *See* Third Circuit Local Appellate Rule 22.1. The Court will issue a certificate of appealability if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the discussion in this Opinion, Petitioner has not made

---

fulfilled because stenographic record of proceedings are purged after twenty years and no transcript was available. (D.E. No. 4-31 at 118).

a substantial showing of denial of a constitutional right, and this Court will not issue a certificate of appealability.

## VI.  CONCLUSION

For the reasons discussed above, Petitioner's habeas petition is denied. An appropriate order follows.

Dated  3/26/20

THE HONORABLE MADELINE COX ARLEO
United States District Judge